Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Melissa J. Levine
mlevine@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Loewe, S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOEWE, S.A., | CIVIL ACTION NO.: |
| *Plaintiff* | |
| v. | |
| ALL-IN-ONE STORE, ANNIE+86 18671363691 STORE STORE, CHANGSHA YUWEI TECHNOLOGY CO., LTD., DONGGUAN YOUXIAN JEWELRY CO., LTD., DONGGUAN ZEHAO JEWELRY CO., LTD., GLOBAL FACTORY SELECTION STORE, GUANGZHOU CHAOYUE LEATHER CO., LTD., GUANGZHOU DAIDAN JEWELRY CO., LTD., GUANGZHOU DONGAI JEWELRY CO., LTD., GUANGZHOU TIANBAO LEATHER PRODUCTION CO., LTD., GUANGZHOU XIUQUAN LEATHERWARE CO., LTD., GUIYANG WANJIANG JEWELRY CO., LTD, HUAIBEI HUIHE TECHNOLOGY CO., LTD., LONGYAN YUQIXUAN GARMENTS CO., LTD., QUANZHOU LICHENG DISTRICT SHIMAIYI TRADING CO., LTD., SHANGHAI CHOZA INDUSTRIAL CO., LTD., SHENZHEN BEST LEATHER HANDBAGS CO., LTD., | **COMPLAINT** **Jury Trial Requested** |

SHOP1104636646 STORE, SHOP1104660580 STORE, TRADE CENTER STORE, YIWU HALO IMPORT & EXPORT CO., LTD., YIWU LIANGDIAN JEWELRY CO., LTD., YIWU LIAOYUAN TRADE CO., LTD., YIWU QIREN JEWELRY FACTORY (INDIVIDUAL BUSINESS), YIWU REBACCAS JEWELRY&CRAFT FACTORY, YIWU SHUQIN CLOTHING CO., LTD., YIWU XINGYING INFORMATION TECHNOLOGY CO., LTD. and YIWU YOUYUE TRADING CO., LTD.,

*Defendants*

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Loewe** | Loewe, S.A. |
| **Defendants** | All-in-One Store, Annie+86 18671363691 Store Store, Changsha Yuwei Technology Co., Ltd., Dongguan Youxian Jewelry Co., Ltd., Dongguan Zehao Jewelry Co., Ltd., Global Factory Selection Store, Guangzhou Chaoyue Leather Co., Ltd., Guangzhou Daidan Jewelry Co., Ltd., Guangzhou Dongai Jewelry Co., Ltd., Guangzhou Tianbao Leather Production Co., Ltd., Guangzhou Xiuquan Leatherware Co., Ltd., Guiyang Wanjiang jewelry Co., LTD, Huaibei Huihe Technology Co., Ltd., Longyan Yuqixuan Garments Co., Ltd., Quanzhou Licheng District Shimaiyi Trading Co., Ltd., Shanghai Choza Industrial Co., Ltd., Shenzhen Best Leather Handbags Co., Ltd., Shop1104636646 Store, Shop1104660580 Store, Trade Center Store, Yiwu Halo Import & Export Co., Ltd., Yiwu Liangdian Jewelry Co., Ltd., Yiwu Liaoyuan Trade Co., Ltd., Yiwu Qiren Jewelry Factory (Individual Business), Yiwu Rebaccas Jewelry&Craft Factory, Yiwu Shuqin Clothing Co., Ltd., Yiwu Xingying Information Technology Co., Ltd. and Yiwu Youyue Trading Co., Ltd. |
| **Alibaba** | Alibaba.com Singapore E-Commerce Pte. Ltd. and/or any other entity that owns and/or operates the Alibaba.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | AliExpress E-Commerce One Pte., Ltd. and/or any other entity that owns and/or operates the AliExpress.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order |

| | |
|---|---|
| | authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Lambert Dec.** | Declaration of Nicholas Lambert in Support of Plaintiff's Application |
| **Turitto Dec.** | Declaration of Michael Turitto in Support of Plaintiff's Application |
| **Loewe Products** | Luxury women's and men's leather goods, clothing, perfume and other fashion accessories |
| **Loewe Marks** | U.S. Trademark Registration Nos.: 1,328,409 for for a variety of goods in Classes 18 and 25; 4,852,854 for for a variety of goods in Class 25; 5,754,088 for for a variety of goods in Classes 18 and 25; 5,946,699 for for a variety of goods in Class 18 and 25; 4,693,808 for for a variety of goods in Class 14; 5,999,318 for for a variety of goods in Class 3; 5,047,314 for for a variety of goods in Classes 3, 9, 14, 18 and 25e; 4,036,941 for a variety of goods in Class 3; 6,458,330 for for a variety of |

| | |
|---|---|
| | goods in Classes 3 and 4; 6,235,345 for **LOEWE AURA** for a variety of goods in Class 3; 2,655,473 for [design] for a variety of goods in Class 9; 2,770,759 for "LOEWE" for a variety of goods in Class 25; 2,079,138 for "ESENCIA LOEWE" for a variety of goods in Class 3; 2,099,086 for "AIRE LOEWE" for a variety of goods in Class 3; 1,122,323 for "LOEWE" for a variety of goods in Classes 16, 18 and 20; 2,770,759 for "LOEWE" for a variety of goods in Class 25; 3,021,208 for "SOLO LOEWE" for a variety of goods in Class 3; 1,513,278 for "LOEWE" for a variety of goods in Class 3 and 14; 6,458,158 for "LOEWE HONESTY" for a variety of goods in Class 3; 6,274,715 for "LOEWE" for a variety of goods in Class 9; 4,152,315 for "AURA LOEWE" for a variety of goods in Class 3; 6,458,331 for "LOEWE" for a variety of goods in Classes 3 and 4; 4,801,597 for "LOEWE" for a variety of goods in Class 35; 7,349,718 for "LOEWE AIRE" for a variety of goods in Class 3; 4,948,683 for "LOEWE 001" for a variety of goods in Class 3; 7,349,717 for "LOEWE SOLO" for a variety of goods in Class 3; 7,349,719 for "LOEWE 7" for a variety of goods in Class 3; 2,698,284 for "LOEWE" for a variety of goods in Class 9; 6,647,043 for "PAULA'S IBIZA" for a variety of goods in Classes 18, 24 and 25; and 4,906,598 for "ECLECTIC" a variety of goods in Class 3 |
| **Loewe Design** | U.S. Design Patent No. D774,299 entitled "Handbag" |
| **Counterfeit Products** | Products bearing or used in connection with the Loewe Marks and/or marks that are confusingly similar to the Loewe Marks, and/or products in packaging and/or with labeling bearing the Loewe Marks and/or marks that are confusingly similar to the Loewe Marks, and/or products that are identical or confusingly similar to the Loewe Products, and/or products using or identical to the Loewe Design |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, |

| | |
|---|---|
| | promote, distribute, display, make, use, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), AUS Merchant Services, Inc. and Alipay Merchant Services Pte. Ltd. ("Alipay"), and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, make, use, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiff, a corporation organized and existing under the laws of Spain, alleges as follows:[1]

## NATURE OF THE ACTION

1.     This action involves claims for trademark infringement of Plaintiff's federally registered trademark in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d); infringement of Plaintiff's design patents in violation of 35 U.S.C. § 271; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims, arising from the infringement of the Loewe Marks and/or Loewe Design, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use of unlicensed, counterfeit and infringing versions of Plaintiff's Loewe Products by Defendants.

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. § 1338(a) as an action arising out of violations of the Patent Act; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.      Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market,

promote, distribute, make, use, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.      Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

d.      Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

e.      Upon information and belief, Defendants are aware of Plaintiff, its Loewe Products and Loewe Marks, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.      Plaintiff Loewe, S.A. is a corporation and existing under the laws of Spain, with an address Calle Goya, 4, Madrid, Spain E-28001.

6.      Upon information and belief, Defendants are merchants on the Alibaba and AliExpress online marketplace platforms, through which Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the screenshots of Defendants' Merchant Storefronts in **Exhibit A**.

## **GENERAL ALLEGATIONS**
### **Plaintiff and Its Well-Known Loewe Products**

7.      Loewe, one of the oldest luxury brands in the world, was founded in 1846 in Madrid, Spain by a group of Spanish leather craftsman and the brand originated in 1876 when Enrique Loewe joined the group.

8.      Loewe is a world-famous luxury brand engaged in the business of selling a diverse portfolio of luxury goods, including men's and women's apparel, accessories, leather goods, perfumes and cosmetics through various channels of trade in the United States and globally. The Loewe brand is recognized for its minimalistic aesthetic and artisanal craftsmanship. Images of the Loewe Products are attached hereto as **Exhibit B** and incorporated by reference.

9.      In 1996, Loewe was acquired by Louis Vuitton Moet Hennessy group ("LVMH").

10.      The Loewe Products are marketed under the Loewe Marks.

11.      The Loewe Products are sold direct to consumer via Loewe's official website, https://loewe.com, and distributed through its own brick and mortar stores along with multi-brand retailers including, but not limited to, Bergdorf Goodman, Neiman Marcus, Saks Fifth Avenue and Selfridges. Loewe is stocked in stores worldwide, including but not limited to, Madrid, Tokyo, Milan, Hong Kong, Miami, and the Wynn Hotel Las Vegas.

12.      The Loewe brand and Loewe Products have been featured in numerous publications, including, but not limited to, *Who What Wear*, *Elle* and *Harper's Bazaar*.

13.      The Loewe Products typically retail for between $65.00 - $16,000.00.

14.      While Plaintiff has gained significant common law trademark and other rights in its Loewe Marks and Loewe Products through use, advertising and promotion, Plaintiff also protected its valuable rights by filing for and obtaining federal trademark registrations.

15.      For example, Loewe owns the following U.S. Trademark Registration Nos.:

1,328,409 for  for a variety of goods in Classes 18 and 25; 4,852,854 for

 for a variety of goods in Class 25; 5,754,088 for  for a variety of

goods in Classes 18 and 25; 5,946,699 for  for a variety of goods in Class 18 and 25;

4,693,808 for  for a variety of goods in Class 14; 5,999,318 for  for a

variety of goods in Class 3; 5,047,314 for  for a variety of goods in Classes 3, 9, 14,

18 and 25e; 4,036,941 for  a variety of goods in Class 3; 6,458,330 for  for a

variety of goods in Classes 3 and 4; 6,235,345 for LOEWE AURA for a variety of goods in Class

3; 2,655,473 for  for a variety of goods in Class 9; 2,079,138 for "ESENCIA LOEWE"

for a variety of goods in Class 3; 2,099,086 for "AIRE LOEWE" for a variety of goods in Class

3; 1,122,323 for "LOEWE" for a variety of goods in Classes 16, 18 and 20; 2,770,759 for

"LOEWE" for a variety of goods in Class 25; 3,021,208 for "SOLO LOEWE" for a variety of

goods in Class 3; 1,513,278 for "LOEWE" for a variety of goods in Class 3 and 14; 6,458,158 for

"LOEWE HONESTY" for a variety of goods in Class 3; 6,274,715 for "LOEWE" for a variety of

goods in Class 9; 4,152,315 for "AURA LOEWE" for a variety of goods in Class 3; 6,458,331 for

"LOEWE" for a variety of goods in Classes 3 and 4; 4,801,597 for "LOEWE" for a variety of

goods in Class 35; 7,349,718 for "LOEWE AIRE" for a variety of goods in Class 3; 4,948,683 for

"LOEWE 001" for a variety of goods in Class 3; 7,349,717 for "LOEWE SOLO" for a variety of

goods in Class 3; 7,349,719 for "LOEWE 7" for a variety of goods in Class 3; 2,698,284 for

"LOEWE" for a variety of goods in Class 9; 6,647,043 for "PAULA'S IBIZA" for a variety of

goods in Classes 18, 24 and 25; and 4,906,598 for "ECLECTIC" a variety of goods in Class 3.

True and correct copies of the registrations for the Loewe Marks are attached hereto as **Exhibit C**

and incorporated herein by reference.

16.    The Loewe Marks are currently in use in commerce in connection with the Loewe

Products.  The Loewe Marks were first used in commerce on or before the dates of first use as

reflected in the respective registrations attached hereto as **Exhibit C**.

17.    The Loewe Products are also known for their distinctive patented designs. These

designs are broadly recognized by consumers. Products containing these designs are associated with

the quality and innovation that the public has come to expect from Loewe Products. Loewe uses these

designs on and in connection with its Loewe Products, including, but not limited to, the following

patented design, hereinafter referred to as "Loewe Design".

| Patent Number | Claim | Issue Date |
|---|---|---|
| D774,299 | Handbag | Dec. 20, 2016 |

18.    Loewe is the lawful owner of all right, title, and interest in and to the Loewe Design.

U.S. Patent No. D774,299 was lawfully issued on December 20, 2016 with named inventor Jonathan

Anderson. Attached hereto as **Exhibit D** is a true and correct copy of the United States Patent for the

Loewe Design.

19.    A clam chart comparing the Loewe Design with Defendants' Counterfeit Products is

attached hereto as **Exhibit E.**

20.    The success of the Loewe Products is due in part to Plaintiff's marketing and

promotional efforts. These efforts include advertising and promotion through social media, Plaintiff's

website (available at https://loewe.com/) and print and internet-based advertising.

21.    Plaintiff's success is also due to its use of the highest quality materials and processes

in making the Loewe Products.

22.    Additionally, Plaintiff owes a substantial amount of the success of the Loewe

Products to its consumers and word-of-mouth buzz that its consumers have generated.

23.    Plaintiff's efforts, the quality of Plaintiff's products and the word-of-mouth buzz

generated by its consumers have made the Loewe Marks, Loewe Design and Loewe Products

prominently placed in the minds of the public. Members of the public and retailers have become

familiar with the Loewe Marks, Loewe Design and Loewe Products and have come to associate them exclusively with Loewe. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such associations.

24.      Plaintiff has gone to great lengths to protect its interests in the Loewe Products, the Loewe Marks and the Loewe Design. No one other than Plaintiff and its authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Loewe Marks and/or Loewe Design, or use the Loewe Marks and/or Loewe Design in connection with goods or services or otherwise, without the express permission of Plaintiff.

### Alibaba and AliExpress and Defendants' User Accounts

25.      Alibaba.com and AliExpress.com are online marketplace and e-commerce platforms that allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

26.      As leaders of China's e-commerce and digital retail market, Alibaba and AliExpress (collectively, the "Alibaba Group"), have generated hundreds of billions in sales worldwide.[2] International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress. For example, in 2019, revenue from international retail sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[3]

27.      In the fiscal year ending on March 31, 2024, the Alibaba Group's revenue was

---

[2] *See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.

[3] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.

approximately \$130.35 billion.[4]

28.     The press reported that the growth in sales on AliExpress resulted from an increase in the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[5]

29.     Additionally, according to Business Insider, excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over \$14 billion in sales in one day.[6]  In 2021, Alibaba set a new Singles Day record with \$84.5 billion in sales across the eleven (11) day event.[7]

30.     Alibaba and AliExpress declined to share their total sales for Singles Day 2023; however, indicated 2023 sales had "a recorded year-on year growth" and 2022 sales were "in line" with the \$84.5 billion in sales reported in 2021.[8]

31.     As addressed in the Wall Street Journal, Fortune and the New York Times,[9] and as

---

[4] Xin Ou, *Annual revenue of Alibaba Group from financial year 2014 to 2024*, STATISTA (June 14, 2022) https://www.statista.com/statistics/225614/net-revenue-of-alibaba/.

[5] *See* Frank Tong, *An Alibaba site sells \$4.5 billion in one year to consumers outside of China*, DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[6] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

[7] Dan Berthiaume, *Alibaba sets new Singles Day record with \$84.5 billion in sales*, CHAIN STORE AGE (Nov. 11, 2021), https://chainstoreage.com/alibaba-sets-new-singles-day-record-845-billion-sales.

[8] Casey Hall, *China's Singles Day Festival Wraps Up with E-commerce Giants Reporting Sales Growth*, REUTERS (Nov. 12, 2023) https://www.reuters.com/world/china/chinas-singles-day-sales-festival-wraps-up-with-e-commerce-giants-reporting-2023-11-12/; Xin Ou, *Alibaba's Gross Merchandise Volume On Singles' Day From 2011 to 2021,* STATISTA (Feb. 27, 2024), https://www.statista.com/statistics/364543/alibaba-singles-day-1111-gmv/; Evelyn Cheng, *Alibaba says 15% of China delivery areas were disrupted during Singles Day shopping festival*, CNBC (Nov. 17, 2022)   https://www.cnbc.com/2022/11/18/alibaba-says-15percent-of-china-delivery-areas-disrupted-during-singles-day.html.

[9] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13,      2016),      http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group,* WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes,* N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on Alibaba.com and AliExpress.com,[10] an astronomical number of counterfeit and infringing products are offered for sale and sold on Alibaba.com and AliExpress.com, as well as other online marketplace platforms, at a rampant rate.

32.    Additionally, the Office of the United States Trade Representative ("USTR") publishes an annual "Notorious Markets List" which highlights specific physical and online markets around the world that are reported to be engaging in and facilitating substantial copyright piracy and trademark counterfeiting, and which is intended to help the U.S. and foreign governments prioritize intellectual property rights (IPR) enforcement that protects job-supporting innovation and creativity in the U.S. and around the world.[11]

33.    In December 2016, the USTR added Alibaba to its "Notorious Markets" list due to its high levels of "reported counterfeiting and piracy."[12]

34.    In February of 2022, the Office of the United States Trade Representative ("USTR") added AliExpress to its list of 2021 "notorious markets", which are "markets that reportedly facilitate substantial trademark counterfeiting."[13]

---

[10] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba,* MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

[11] *See Press Release, Office of the United States Trade Representative, USTR Releases 2023 Review of Notorious Markets for Counterfeiting and Piracy*, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE (Jan. 2024), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2024/january/ustr-releases-2023-review-notorious-markets-counterfeiting-and-piracy; Office of The United States Trade Representative, 2023 Review of Notorious Markets for Counterfeiting and Piracy (2023), *available at* https://ustr.gov/sites/default/files/2023_Review_of_Notorious_Markets_for_Counterfeiting_and_Piracy_Notorious_Markets_List_final.pdf.

[12] Laura Stevens, *Alibaba Lands on U.S. Governments' 'Notorious Markets' List for Fakes,* WALL STREET JOURNAL (Dec. 21, 2016), https://www.wsj.com/articles/alibaba-lands-on-u-s-governments-notorious-markets-list-for-fakes-1482356081; *see also Alibaba Lands on U.S. Notorious Markets List for Lax Counterfeit Policies*, CHINATECHNEWS (Dec. 22, 2016), https://www.chinatechnews.com/2016/12/22/24615-alibaba-lands-on-u-s-notorious-markets-list-for-lax-counterfeit-policies.

[13] Michelle Toh, *The US accuses Tencent and Alibaba of letting sellers traffic fake goods*, CNN (Feb. 18, 2022)

35.    On January 31, 2023, the USTR released its 2022 Review of Notorious Markets for Counterfeiting and Piracy, and AliExpress was again designated a "notorious market."[14] The USTR specifically noted that a "key concern of right holders is that penalties for repeat infringers do not stop counterfeit sellers on AliExpress from remaining on the market, such as by operating multiple accounts."[15]

36.    Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Alibaba and AliExpress, as well as potentially yet undiscovered additional online marketplace platforms.

37.    Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

38.    Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

39.    Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

## **Defendants' Wrongful and Infringing Conduct**

40.    Particularly in light of Plaintiff's success with its Loewe Products, as well as the

---

https://www.cnn.com/2022/02/17/business/china-tencent-alibaba-notorious-markets-list-intl-hnk/index.html.
[14] *USTR Releases 2022 Review of Notorious Markets for Counterfeiting and Piracy*, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE (Jan. 31, 2023), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2023/january/ustr-releases-2022-review-notorious-markets-counterfeiting-and-piracy.
[15] *Id*.

reputation they have gained, Plaintiff and its Loewe Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Loewe Products, Loewe Marks and Loewe Design and Plaintiff investigates and enforces against such activities.

41.     Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, making, using, offering for sale, selling, importing into the United States for subsequent sale or use and/or otherwise dealing in Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts.  Screenshots of Infringing Listings from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit A** attached hereto and incorporated herein by reference.

42.     Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, make, use offer for sale or sell the Loewe Products or to use the Loewe Design, Loewe Marks, or any marks that are confusingly similar to the Loewe Marks.

43.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Loewe Products, only with minor variations that no ordinary consumer would recognize.

44.     During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York

Address are included in **Exhibit A**.

45.    Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit A**.

46.    For example, below on the left is an image of one of Plaintiff's Loewe Products. Depicted further below is a listing for Defendant All-in-One Store's Counterfeit Product ("All-in-One Store Infringing Listing" and "All-in-One Store Counterfeit Product," respectively).  The All-in-One Store Infringing Listing appears on Defendant All-in-One Store's Merchant Storefront, https://www.aliexpress.com/store/1103199680, and offers the All-in-One Store Counterfeit Product for $50.73, using, featuring and/or incorporating the Loewe Design in the product images in the body of the listing. Further, the All-in-One Store Counterfeit Product is virtually identical to one of Plaintiff's Loewe Products and features and/or incorporates the Loewe Design. There is no question that the All-in-One Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Loewe Products or that the All-in-One Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Loewe Design:

**Loewe Product**

**Defendant's Counterfeit Product**





47.    By way of another example, below on the left is an image of one of Plaintiff's Loewe Products.  Depicted further below is a listing for Defendant Dongguan Zehao Jewelry Co., Ltd's Counterfeit Product ("Dongguan Zehao Jewelry Co., Ltd Infringing Listing" and "Dongguan Zehao Jewelry Co., Ltd Counterfeit Product", respectively). The Dongguan Zehao Jewelry Co., Ltd's Infringing Listing appears on Defendant's Merchant Storefront,https://zhsp1.en.alibaba.com/index.html, and offers the Dongguan Zehao Jewelry Co., Ltd Counterfeit Product for $2.88 – $3.15 per item (depending on the quantity purchased), using, featuring and/or incorporating one or more of the Loewe Marks and/or confusingly similar marks in the listing title and/or in the descriptions and/or product images in the body of the listing. Further, the Dongguan Zehao Jewelry Co., Ltd Counterfeit Product is virtually identical to one of Plaintiff's Loewe Products and features and/or incorporates the Loewe Marks. There is no question that the Dongguan Zehao Jewelry Co., Ltd Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Loewe Products or that the Dongguan Zehao Jewelry Co., Ltd Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Loewe Marks:

| **Loewe Product** | **Defendant's Counterfeit Product** |
|:---:|:---:|
|  |  |

48.     As another example, below on the left is an image of one of Plaintiff's Loewe Products.  Depicted further below is a listing for Defendant Changsha Yuwei Technology Co., Ltd.'s Counterfeit Product ("Changsha Yuwei Technology Co., Ltd. Infringing Listing" and "Changsha Yuwei Technology Co., Ltd. Counterfeit Product," respectively). The Changsha Yuwei Technology Co., Ltd. Infringing Listing appears on Defendant Changsha Yuwei Technology Co., Ltd. Merchant Storefront, https://csyuwei.en.alibaba.com/index.html, and offers the Changsha Yuwei Technology Co., Ltd. Counterfeit Product for $0.34 - $0.37 per item (depending on the quantity purchased), using, featuring and/or incorporating one or more of the Loewe Marks and/or confusingly similar marks in the listing title and/or in the descriptions and/or product images in the body of the listing. Further, the Changsha Yuwei Technology Co., Ltd. Counterfeit Product is virtually identical to one of Plaintiff's Loewe Products and features and/or incorporates the Loewe Marks. There is no question that Changsha Yuwei Technology Co., Ltd. Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Loewe Products or that the Changsha Yuwei Technology Co., Ltd. Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Loewe Marks:

**Loewe Product**     **Defendant's Counterfeit Product**




49.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, making, using, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Loewe Marks and/or Loewe Design, and have used designs and/or marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the Loewe Marks and/or Loewe Design in order to confuse consumers into believing that such Counterfeit Products are the Loewe Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the Loewe Marks and Loewe Design, after Plaintiff obtained federal registrations in the Loewe Marks and Loewe Design, as alleged above, and after Plaintiff's Loewe Products, Loewe Marks and Loewe Design became well-known to the purchasing public.

50.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Loewe Marks and Loewe Design, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Loewe Products, and in bad faith adopted and/or used the Loewe Marks and/or

Loewe Design.

51.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, its Loewe Marks, Loewe Design and Loewe Products.

52.    Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

53.    By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Loewe Marks, infringed the Loewe Design, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

54.    Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Trademark Counterfeiting)
### [15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]

55.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

56.    Plaintiff is the exclusive owner of all right and title to the Loewe Marks.

57.    Plaintiff has continuously used the Loewe Marks in interstate commerce since on

or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit C**.

58.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Loewe Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Loewe Marks and/or used spurious designations that are identical with, or indistinguishable from, the Loewe Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

59.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Loewe Marks through their participation in such activities.

60.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Loewe Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or

equity.

61.     Defendants' unauthorized use of the Loewe Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Loewe Marks.

62.     Defendants' actions constitute willful counterfeiting of the Loewe Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

63.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Loewe Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Loewe Marks.

64.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[15 U.S.C. § 1114/Lanham Act § 32(a)]**

65.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

66.     Plaintiff has continuously used the Loewe Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit C.**

67.     Plaintiff, as owner of all right, title and interest in and to the Loewe Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

68.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Loewe Marks.

69.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Loewe Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Loewe Products and/or related products bearing the Loewe Marks into the stream of commerce.

70.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Loewe Marks and/or which are identical or confusingly similar to the Loewe Marks.

71.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Loewe Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

72.    Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Loewe Marks.

73.    Defendants' egregious and intentional use of the Loewe Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Loewe Products or are otherwise associated with, or authorized by, Plaintiff.

74.    Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Loewe Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

75.    Defendants' continued, knowing, and intentional use of the Loewe Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Loewe Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

76.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Loewe Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Loewe Marks.

77.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of

Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

78.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

79.    Plaintiff, as the owner of all right, title and interest in and to the Loewe Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

80.    The Loewe Marks are inherently distinctive and/or have acquired distinctiveness.

81.    Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Loewe Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Loewe Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill

associated with, and the consumer recognition of, the Loewe Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

82.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Loewe Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Loewe Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Loewe Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Loewe Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

83.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Loewe Marks would cause confusion, mistake or deception among purchasers, users and the public.

84.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff's Loewe Products and Loewe Marks.

85.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Loewe

Products and by depriving Plaintiff of the value of its Loewe Marks as a commercial asset in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Loewe Marks.

86.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Infringement of United States Design Patent No. D774,299)**
**[35 U.S.C. § 271]**

87.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

88.     Plaintiff has the exclusive rights on Design Patent U.S. D774,299 claiming the design features of its Loewe Products.

89.     Defendants are infringing the Loewe Design by making, using, offering for sale, importing and/or selling Counterfeit Products sold under identical designs to the Loewe Design.

90.     Defendants have infringed the Loewe Design through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Loewe to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.  Loewe is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

91.     Loewe is entitled to recover damages adequate to compensate for the infringement,

including Defendants' profits pursuant to 35 U.S.C. § 289. Loewe is entitled to recover any other

damages appropriate pursuant to 35 U.S.C. § 284.

**FIFTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

92.     Plaintiff repleads and incorporates by reference each and every allegation set forth

in the preceding paragraphs as if fully set forth herein.

93.     By manufacturing, importing, exporting, advertising, marketing, promoting,

distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit

Products, Defendants have traded off the extensive goodwill of Plaintiff and its Loewe Products

to induce, and did induce and intend and will continue to induce, customers to purchase their

Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and

will continue to permit Defendants to make substantial sales and profits based on the goodwill and

reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising,

sales and consumer recognition.

94.     Defendants' advertising, marketing, promoting, distributing, displaying, offering

for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and

derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive

consumers and the public as to the source, origin, sponsorship or quality of Defendants'

Counterfeit Products.

95.     Defendants knew, or by the exercise of reasonable care should have known, that

their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or

otherwise dealing in the Counterfeit Products and their continuing advertising, marketing,

promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the

Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

96.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

97.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Loewe Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Loewe Marks and Loewe Design as a commercial asset in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

98.    As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.    For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Loewe Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.    For an award of damages against Defendants that are adequate to compensate Loewe for Defendants' infringement of the Loewe Design, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interests and costs, pursuant to 35 U.S.C. § 284 and that the amount of damages awarded to Loewe to compensate Loewe for infringement of the Loewe Design be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

F.    In the alternative, for an award of all of Defendants' profits realized by Defendants from Defendants' infringement of the Loewe Design, pursuant to 35 U.S.C. § 289;

27

G.    For an award of damages to be proven at trial for common law unfair competition;

H.    For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

i.    manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, making, using, offering for sale, selling, importing into the United States for subsequent sale or use and/or otherwise dealing in the Counterfeit Products;

ii.    directly or indirectly infringing in any manner any of Plaintiff's Loewe Marks and/or Loewe Design;

iii.    using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Loewe Marks and/or Loewe Design to identify any goods or services not authorized by Plaintiff;

iv.    using any of Plaintiff's Loewe Marks or any other marks that are confusingly similar to the Loewe Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v.    using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to

28

deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing,

encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.  providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.  instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

I.  For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Loewe Marks and/or Loewe Design, or bear any marks that are confusingly similar to the Loewe Marks;

J.  For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's Loewe Marks, or bear any marks that are confusingly similar to the Loewe Marks pursuant to 15 U.S.C. § 1118;

K.   For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, making, using offering for sale, sale, importing into the United States for subsequent sale or use and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

L.   For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

M.   For an award of exemplary or punitive damages in an amount to be determined by the Court;

N.   For Plaintiff's reasonable attorneys' fees;

O.   For all costs of suit; and

P.   For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Dated: October 20, 2025                    Respectfully submitted,

EPSTEIN DRANGEL LLP

BY:   _____

Melissa J. Levine
mlevine@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)

asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Loewe, S.A.*